UNITED STATES OF AMERICA )
)
)
)
v. )      1:23-cr-031-CLC-MJD-1
)
SPENCER MCPHERSON, )
    Defendant. )

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

### Introduction and Summary

Spencer McPherson has pled guilty to a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) (non-ACCA), based on firearms discovered in his vehicle after a traffic stop. His Presentence Investigation Report (PSR) [Doc. 73] calculates his total offense level as 25, his criminal history category as VI, and his advisory guideline range as 110-137 months. (PSR ¶ 98). Mr. McPherson has filed an objection to his guideline calculation, as it improperly assesses a 4-point enhancement under USSG §2K2.1(b)(7)(B). If the Court sustains this objection, Mr. McPherson's total offense level will change to 21, his criminal history category will remain as VI, and his advisory sentencing guideline range will be 77-96 months.

Mr. McPherson respectfully moves for a downward variance for the following reasons, which are set forth in more detail below:

1. Mr. McPherson's criminal history category of VI substantially over-represents his criminal history and his likelihood of re-offense.

2. Mr. McPherson's positive adjustment to incarceration.

3. Mr. McPherson's significant substance abuse history and desire for treatment.

4. Mr. McPherson's significant mental health history.

1

5. Mr. McPherson's strong family support.

6. JSIN Data and the need to avoid an unwarranted sentence disparity between Mr. McPherson and other defendants with similar records who have been found guilty of similar offenses.

Granting Mr. McPherson an appropriate downward variance and sentencing him accordingly will fulfill all the Court's sentencing goals under 18 U.S.C. §3553(a). The sentence imposed will still reflect the seriousness of his offense, promote respect for the law, provide just punishment, afford adequate deterrence to others, and protect the public from further criminal activity. At the same time, however, granting an appropriate downward variance will take into account Mr. McPherson's particular history and characteristics and his significant potential for rehabilitation. In this manner, the Court can fashion a sentence that is sufficient to correct Mr. McPherson's behavior, while at the same time preparing him for success in the community when released.

Relevant Facts of the Case

The relevant facts are set forth in ¶ 4 of Mr. McPherson's plea agreement [Doc. 63] and ¶¶ 13-33 of the PSR [Doc. 73], and are summarized below. The relevant events of the traffic stop were also captured on law enforcement body camera recordings, which are available for the Court's review.

On June 28, 2022, officers of the Chattanooga Police Department conducted a traffic stop on East 13th Street for an alleged window tint violation. Mr. McPherson was the driver and sole occupant of the vehicle, which his mother had leased from Volkswagen. Shortly after the stop, Mr. McPherson exited the vehicle with his valid driver's license in his hand, and was ordered by the officers to come to the front of their patrol vehicle. The patrol vehicle was parked

2

approximately 1.5 car lengths behind Mr. McPherson's vehicle.  Mr. McPherson could not reach or otherwise access his vehicle from his location at the front of the patrol vehicle.

At first, the conversation between the officers and Mr. McPherson was cordial.  The officers denied Mr. McPherson's request to go back to the vehicle and retrieve the vehicle's registration and proof of insurance, but Mr. McPherson agreed to allow one of the officers to retrieve the registration from the glove box of the car.  Upon return, the officer advised Mr. McPherson that he had smelled the odor of burnt marijuana in the car, and Mr. McPherson admitted that he had recently smoked marijuana in the car and that there was a "roach" in the vehicle.  When the officer advised Mr. McPherson that he was going to search the vehicle, Mr. McPherson became agitated.  A protracted struggle ensued while the officers attempted to detain Mr. McPherson, aided by a third officer who arrived on the scene.  The struggle began in front of the patrol car and ended next to the passenger door of Mr. McPherson's vehicle.  Neither the officers nor Mr. McPherson entered the vehicle during the struggle.  Eventually, Mr. McPherson was handcuffed and placed in the patrol vehicle.  Mr. McPherson had no weapons on his person when detained.

During a subsequent search of Mr. McPherson's vehicle, a handgun was located in the center console.  A marijuana cigar was located inside the console, and a single hydrocodone pill was found in the front seat.  Two other handguns were located on the rear floorboard of the vehicle.  From the actions of the officers before, during, and after the incident, it is apparent that they did not know about the presence of the firearms in the vehicle prior to the vehicle search.

During subsequent interrogation, Mr. McPherson admitted to ownership of the handgun located in the center console, but denied ownership of the other two firearms, "stating that he was 'set up' by an unidentified individual."  (PSR ¶ 31).  He "stated he received a call from a

3

known female's juvenile daughter instructing him to come to an address. Once he was there, the known female's juvenile son entered the backseat of his vehicle, requesting to be driven to a store. [Mr. McPherson] said the juvenile male quickly exited the vehicle and returned back to the address." (PSR ¶ 32)

Mr. McPherson was initially charged in Hamilton County Sessions Court with various offenses, including resisting arrest and possessing a firearm with intent to go armed. [PSR ¶ 67] He was subsequently charged with aggravated assault against the two law enforcement officers who initially attempted to detain him. [PSR ¶ 68] Those charges are still pending. On March 28, 2023, he was indicted in Federal court on the instant offense and transferred to Federal custody shortly thereafter by writ. He has been in Federal custody ever since.

Relevant Law

18 U.S.C. § 3553(a) directs this Court to impose a sentence "sufficient, but not greater than necessary" to achieve certain goals. These goals, set out by Congress in 18 U.S.C. § 3553(a)(2), include both (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The Federal Sentencing Guidelines were determined to be merely advisory in *United States v. Booker*, 543 U.S. 220 (2005). Since that time, district courts may determine the weight to give to the guidelines in any given case. "The district court may determine on a case-by-case basis the relative weight to give the Guidelines in light of other 3553(a) factors. In some cases it

4

may be appropriate to defer to the Guidelines; in others not." *United States v. Lozano*, 490 F.3d 1317, 1324 (11th Cir. 2007) (internal punctuation and authority omitted). Specific characteristics of individual defendants, which district courts were once prohibited or discouraged from considering, may now be considered. *See Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2473 (2007) (Stevens, J., concurring) ("Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines . . . These are, however, matters that § 3553(a) authorizes the sentencing judge to consider.") (emphasis added); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) ("The other factors cited by the district court, though discouraged or prohibited departure factors under the mandatory guidelines, may also be considered in applying the § 3553(a) factors under *Booker*."); *United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like age, employment, and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation").

Factors Supporting Downward Variance

1.  <u>Mr. McPherson's Criminal History Category of VI Substantially Over-represents His Criminal History and his Likelihood of Re-Offense[1]</u>

While Mr. McPherson has a significant criminal history, the bulk of it occurred during a period of less than two years when he was aged 19-21.  Almost all of these offenses stemmed from his volatile relationship with Jameshea Beamon, the mother of his child, and her mother Tara Pines.  A total of 10 of Mr. McPherson's 15 criminal history category points reflect

---

[1] Prior to the November 1, 2025 Amendments to the Sentencing Guidelines, this variance request would have been raised as a downward departure request under U.S.S.G. §4A1.3(b).

5

offenses Mr. McPherson committed during that short time period based on the conflict in that relationship.[2] [PSR ¶¶ 52-61]

Given Mr. McPherson's history with Ms. Beamon, her assessment of his behavior during that time period and his subsequent improvement and maturity over the intervening years carries particular weight. In a 2023 letter filed with the Court [Doc. 25] and attached to this memorandum as Exhibit 1, Ms. Beamon states frankly that

> *[M]e and McPherson has been in a relationship since high school and we currently still together. Unfortunately in 2012 things and time began to get rough for us while going through the pregnancy of our first child. We had our differences, problems like any other relationships mainly we were both immature which led us to making poor decisions that would result in McPherson catching charges against my mother (Tara Pines) and myself. … McPherson was sent off to prison for a couple years[.] I visited him and we also stayed in contact with each other. We overcame our problems and when he was released my family, his family and everyone around saw the change, and the man in which he had became while incarcerated. Despite his past mistakes he came home and was a great father and always has been. We've had two more children since his release. I pray and hope the courts and judge will take this letter into consideration because McPherson payed his debt to society and served his time in full and the old charges should not be used against him in this new case. We have 3 sons together now that really needs [their] father here in their life to raise them up and lead them in the right path so that they will not make the same mistakes McPherson made. It is so hard being a black mother trying to raise 3 young men without their father being around. If noone else needs McPherson his children needs their father. I am doing the best I can with r[a]ising and taking care of my children but I can not teach them how to be young men they need their father! Too many of our black fathers are lost in the system and I believe that is what is causing the younger generation to grow up in poverty and that is not what I want my sons to go through.*

One of the purposes of a criminal history category assessment is to address the likelihood that a defendant will re-offend in the future. *See* USSG Ch. 4, Part A, Introductory Commentary.

---

[2] While Mr. McPherson's indictment initially alleged that he was subject to enhanced penalties under 18 U.S.C. § 924(e)(1), a substantial factual question existed as to whether the Government could meet its burden of showing that the alleged underlying offenses were "committed on occasions different than one another." *See Wooden v. United States*, 595 U.S. 360, 142 S.Ct. 1063 (2022). This issue is more fully addressed in Mr. McPherson's *Motion to Dismiss "Enhanced Penalties" Portion of Indictment* [Doc. 56]. Mr. McPherson later moved the Court to strike that motion after the parties reached a plea agreement that did not include the enhanced penalties.

6

While past behavior is often a predictor of future behavior, it is also true that for certain defendants the simple mathematical calculation of a turbulent past fails to recognize a later period of rehabilitation. Given that two-thirds of Mr. McPherson's criminal history category points come from offenses stemming from his relationship with Ms. Beamon and committed in a two-year period more than a decade ago when he was barely an adult, and given that he has demonstrated substantial rehabilitation between his last release from incarceration and now, it is respectfully suggested that a criminal history category of IV is a more accurate assessment of his criminal history.

2. <u>Mr. McPherson's Positive Adjustment to Incarceration</u>

An inmate facing a prolonged period of pretrial detention has two choices of how to spend his time. Some inmates choose to waste that time, focusing on grievances and past resentments rather than reflecting on the personal choices and circumstances that brought them to that point. A small minority, however, use that time spent in pretrial detention as a period of personal growth, transforming their own character and increasing the likelihood that they will not re-offend once released. Mr. McPherson is in that minority. During his pretrial detention, he has taken full advantage of his opportunities, preparing for his GED exam and and completing the following courses (attached as Exhibit 2):

| Course Title | Date Certificate Issued |
|---|---|
| Anger Management - StoneRiver | September 16, 2024 |
| The Basics of Managing Stress in 2 Hours | September 16, 2024 |
| The Lost Art of Being Present | September 16, 2024 |
| Hidden Secrets of Selling – Part 4 | March 18, 2025 |
| Beginning Math Skills | March 21, 2025 |
| Letters and Sounds for Beginner Readers | March 21, 2025 |
| I Can Use Letter Sounds to Decode Words | March 21, 2025 |
| Children's Rights | March 21, 2025 |
| How to Reach Your Full Potential | April 22, 2025 |
| Breaking the Cycle: Parenting with Purpose & Healing | September 1, 2025 |

| Advanced Parenting Skills | September 15, 2025 |
|---|---|
| Breaking the Silence: Addressing Domestic Violence | September 16, 2025 |
| Thinking Critically SR | September 19, 2025 |
| RISE Nurturing Neurons | October 7, 2025 |
| Domestic Violence by Syreta Toson Provided by Harbor Solutions | October 7, 2025 |
| REBT – Rational Emotive Behavior Therapy | October 7, 2025 |
| The Art of Reinventing Yourself | October 7, 2025 |
| Coping Skills for a Better Life | October 7, 2025 |
| Principles of Success – Growth Mindset | October 7, 2025 |

His diligence, commitment, and leadership skills have drawn praise from his instructor, Heath Croft. In a letter dated September 16, 2025 and attached as Exhibit 3, Mr. Croft notes the following:

> *Mr. McPherson is currently enrolled in our Adult Education Program which meets two times each week at the DeKalb County Correctional Facility in Fort Payne, Alabama. Spencer is consistent in his involvement in class and diligent in completing his courses. Over the past several months, Mr. McPherson has completed MAP (Mobilizing Alabama Pathways) and is working towards completing ACE (Alabama Career Essentials) as well as pursuing his GED. Once those milestones are accomplished, he will work towards completion of the WorkKeys Curriculum, a nationally recognized certificate which, upon completion, awards Mr. McPherson one free college course at any Community College within the state of Alabama. By completing his GED, ACE, and WorkKeys, Mr. McPherson will receive a total of three free college courses at any Community College in the state of Alabama. All of these opportunities of which he has taken advantage of, will only help to ensure that Spencer, once released from custody, will serve as a positive example of how someone who is determined can change the course of their life in a positive manner.*
> 
> *. . .*
> 
> *Spencer McPherson is a consistent student and represents the best of what our program is about. He is working to better himself and prepare for a fruitful life outside of the correctional facility. Spencer has a positive attitude and sincere desire to integrate himself into society as a productive member of the community once his sentence is completed. It is my sincere and humble request that you look favorably on Mr. McPherson and consider the work he is doing to prepare for life outside of incarceration when ruling in his case. I endorse Mr. McPherson without any reservation whatsoever as a student and person.*

*Aside from my work in the classroom, I am a pastor of a local congregation in DeKalb County. As such, I make a point to care for the educational and spiritual needs of those to whom I have been given the honor of serving. I can say with confidence that Mr. McPherson exhibits himself with a sincerity that serves as fruit of his decision to change his life for the better.*

3.  Mr. McPherson's Significant Substance Abuse History and Desire for Treatment

Mr. McPherson began using marijuana at the age of 15 or 16, and described himself as a "chain smoker" of marijuana as of the time of his arrest. [PSR ¶ 91]. He began abusing opiates at the age of 22, and was a daily user at the time of his arrest. [PSR ¶ 91] A single hydrocodone pill was found in his vehicle after his arrest [PSR ¶ 91], consistent with personal use. Given his history of heavy and chronic use, it is likely that Mr. McPherson was under the influence of marijuana and/or opiates at the time of his arrest. His erratic and ill-considered behavior during the traffic stop and detention is consistent with the impaired decision-making one would expect from a daily user of narcotics.

Mr. McPherson recognizes the detrimental effect his drug habit has had on his life, and hopes to participate in substance abuse treatment while in the Bureau of Prisons. [PSR ¶ 92]. He respectfully requests that the Court recommend his participation in RDAP while incarcerated.

4.  Mr. McPherson's Significant Mental Health History

Mr. McPherson has a long history of mental health problems. As a juvenile, he was referred to the Fortwood Center for mental health services, including individual and family counseling and medication for his ADHD. [PSR ¶ 89]. Juvenile Court records verify that he was diagnosed with depression and ADHD and placed on a continuous treatment plan due to "exacerbation of symptoms." His mental health challenges continued, as demonstrated through his early adult years and the initial part of his relationship with Ms. Beamon. While detained for

9

this case in the DeKalb County Correctional Center, he has received treatment for anxiety, which he manages through a regimen of prayer, reading, and exercise.  [PSR ¶ 21].

Mr. McPherson respectfully requests that the Court recommend to the BOP that he receive a mental health evaluation and any necessary treatment, to include counseling and medication as recommended.  Effective mental health treatment and support will greatly benefit Mr. McPherson on release and will be a significant factor in his future rehabilitation.

5.  Mr. McPherson's Strong Family Support

Mr. McPherson is fortunate to have a strong family network that has continued to support him throughout this case.  Attached as Exhibits 4-6 are letters from family members who have known him all his life, and thus can inform the Court about his early years, his difficult young adulthood, and the promise he shows for his future.

a.  Robbie Smith (Spencer's mother):

*I am writing this letter as a parent who knows him better than anyone else and who has witnessed both his struggles and his many positive qualities over the years.*

*Spencer was raised in a single-parent home, and while I've always done my best to provide for and guide him, I recognize that growing up without both parents present created challenges for him emotionally and socially.  Like many young people, he made mistakes while trying to find his way, but I have also seen the remorse, self-reflection, and maturity that have come from those experiences.*

*Despite the difficulties he's faced, my son has always been a kind, caring, and generous person.  He is the first to offer help to others, whether it's assisting family members, supporting friends, or lending a hand in the community.  He has a good heart and genuinely wants to do what's right.  I know that this situation has deeply affected him and that he understands the seriousness of it. More importantly, he is taking real steps to learn from it and make better choices moving forward.*

*As his parent, I have seen firsthand his growth, humility, and willingness to take responsibility for his actions.  I truly believe he has learned from this experience and will continue to move in a positive direction.  He has my full*

10

*love, support, and belief that he can continue becoming the responsible, respectful man I know he's capable of being.*

*Thank you for taking the time to read this letter and consider my perspective. Spencer has a strong support system behind him, and we all are willing and committed to helping him stay on the right path and continue learning from this experience.*

b. <u>Miya Harris</u> (Spencer's aunt):

*My name is Miya Harris and I am the aunt of Spencer McPherson. I have known Spencer his entire life and have watched him grow from a kind and curious child into a caring and responsible young man. I am writing this letter to share my personal experience and perspective on Spencer's character.*

*Spencer was raised in a single-parent home, and I have always admired the way he has handled life's challenges with maturity and strength. Despite the obstacles that can come with that situation, he has shown great respect for his family and a strong desire to support and protect those he loves. He often goes out of his way to help his mother and other family members, which speaks volumes about his sense of responsibility and compassion.*

*Spencer has always been someone who looks out for others. Whether it's helping family members with daily tasks or volunteering to assist friends in need, he consistently shows kindness and a genuine willingness to help. He is polite, respectful, and thoughtful in his actions – qualities that have always made me proud to call him my nephew.*

*I am aware that Spencer is currently involved in a court matter, and I want to acknowledge that he has expressed deep remorse and understanding about the situation. From my conversations with him, I can see that he recognizes the seriousness of his actions and is committed to learning and growing from this experience. I truly believe that this has been a valuable lesson for him and that he is determined to make positive changes in his life moving forward.*

*Spencer is not defined by this one moment. He has a good heart, a strong sense of responsibility, and the potential to continue contributing positively to his community and family. I have full faith that he will take this opportunity to demonstrate the kind and dependable person he truly is.*

*Thank you for taking the time to read this letter and consider my perspective. Please know that Spencer has a loving and supportive family behind him, and we are all committed to helping him stay on a positive path.*

11

c. <u>Lashon Powell</u> (Spencer's aunt):

*I'm Lashon Powell Spencer's Aunt. I've known him all of his life and was there when he was born. He has always been so respectful to me and my husband, always yes ma'am and ye[s] sir. He has always been that way since he was a little b[o]y. He has 3 beautiful children and they really miss him. I'm sure he really wants to be there for them because he recently lost his Father to stomach cancer. I truly believe that he needs to be given another chance so that he can become a law-abiding citizen, and a father to his children. If given another chance my husband and I will be intouch with him on a regular [basis] to encourage him with doing the right thing.*

In addition, Mr. McPherson maintains relationships with his children, fulfilling his role as their father as best he can while incarcerated. [See PSR ¶¶ 82-83]

A strong support network upon release will be a major factor in Mr. McPherson's future success and rehabilitation. He therefore respectfully requests that the Court recommend to the BOP that he be housed at an appropriate facility as close to Chattanooga as possible. Doing so will help him maintain his support network and nurture his relationship with his children as they grow.

6. <u>JSIN Data and the Need to Avoid an Unwarranted Sentence Disparity Between Mr. McPherson and other Defendants with Similar Records Who Have Been Found Guilty of Similar Offenses</u>

18 U.S.C. § 3553(a)(6) mandates that the Court, as part of fashioning a sentence in a particular case that is "sufficient, but not greater than necessary," consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." To assist the Court in that task, the Sentencing Commission compiles Judiciary Sentencing Information (JSIN), which allows the Court and parties to see average and median sentence information from across the nation over the last 5 fiscal years (FY2020-2024), based on primary sentencing guideline and advisory sentencing guideline range. By reference to JSIN, a court can ensure that a sentence it imposes on a particular defendant is not

12

disproportionate to others similarly situated.  Like the Guidelines themselves, JSIN information is not binding on a sentencing court, but it provides a valuable tool towards the statutorily-mandated goal of eliminating unwarranted sentencing disparity.

Under either the current guidelines range in the PSR or the guidelines range that would apply if Mr. McPherson's PSR objection is sustained, JSIN data supports a downward variance. Mr. McPherson's applicable sentencing guideline is USSG §2K2.1.  The PSR proposes a guidelines range of 110-137 months, based on a total offense level of 25 and a criminal history category of VI.  [PSR ¶ 98].  JSIN data for that guideline, total offense level, and criminal history category, however, shows that similarly-situated defendants receive an average sentence of 96 months.  If Mr. McPherson's objection is sustained, his total offense level will reduce to 21 and his sentencing guidelines range would be 77-96 months.  JSIN data for his guideline with a total offense level of 21 and criminal history category of VI shows that similarly-situated defendants received an average sentence of 71 months.  *See* Exhibit 7.  Thus, under either scenario, a downward variance is appropriate to avoid an unwarranted sentencing disparity between Mr. McPherson and defendants with similar records who have been found guilty of similar conduct.

Conclusion

Spencer McPherson is a work in progress, but the trajectory of his life is positive.  While his early years were turbulent and difficult, he has worked steadily since his last release from incarceration to better himself as a partner, a father, and a community member.  He has reinforced that positive progress by using his pretrial detention to continue improving himself, preparing for his GED, earning numerous certificates, and receiving a strong positive endorsement from his instructor.  His personal growth is further evidenced by his renunciation of his prior gang membership and his embrace of the Muslim faith.  While Mr. McPherson violated

13

the law in this case, and will be punished for those actions, a holistic review of his history should convince the Court that the Spencer McPherson it is sentencing now is more mature, more motivated to change, and more committed to his family and children than the young man who got in trouble repeatedly more than a decade ago.

Just as a sentence that is too short may fail to reflect the seriousness of the offense, promote respect for the law, or provide just punishment, so will a sentence that is excessively harsh. *See, e.g., United States v. Ontiveros*, 07-CR-333, 2008 U.S. Dist. LEXIS 58774, *6 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]"); *United States v. Zavala*, No. 07-14851, 2008 U.S. App. LEXIS 24168, *8-9 (11th Cir. Nov. 25, 2008) ("[A]ny higher sentence would promote disrespect for the law.") (quoting the district court). By granting an appropriate downward variance and imposing a sentence followed by supervised release with appropriate conditions, the Court can ensure that Mr. McPherson receives both appropriate punishment for his offense and necessary supervision and support after release. Such a sentence meets the common needs of the community and Mr. McPherson for appropriate punishment and adequate rehabilitation. It corrects his behavior without depriving him of a meaningful future. It also provides an opportunity for Mr. McPherson to re-establish a productive and law-abiding life upon release.

Defendant's Additional Requests

Based on his unique history and circumstances, and the facts of this case, Mr. McPherson respectfully requests that the Court make the following findings as part of his sentencing order:

1.  Pursuant to USSG § 5G1.3(c), an order that Mr. McPherson's sentence run concurrently with any sentence imposed by the State of Tennessee for the events

14

charged in Hamilton County General Sessions Court Case Numbers 1879357-63 (PSR ¶ 67) and Hamilton County General Sessions Court Case Numbers 1879451-52 (PSR ¶ 68). For each set of charges, the PSR notes that "[t]he circumstances for this arrest comprise the details of the instant federal offense." Mr. McPherson was transferred to this Court via writ from state custody, and will be returned to state custody after his Federal sentencing to address those charges. He will also serve any state sentence imposed for those charges before commencing his Federal imprisonment. Concurrent sentencing is therefore appropriate. *See* USSG § 5G1.3, Application Note 3.[3]

2. A recommendation to the Bureau of Prisons that he be permitted to participate in RDAP.

3. A recommendation to the Bureau of Prisons that he be permitted to participate in UNICOR or other appropriate vocational training.

4. A recommendation to the Bureau of Prisons that he be placed in a BOP facility as close as possible to Chattanooga to facilitate ongoing contact with his family and support system.

---

[3] In Mr. McPherson's plea agreement [Doc. 63, ¶ 7], the Government and Mr. McPherson agreed to a non-binding recommendation under Rule 11(c)(1)(B) for Mr. McPherson's Federal sentence to run concurrently with any state sentence in Hamilton County General Sessions Court Case Numbers 1879357-63. The plea agreement specifically notes, however that this joint recommendation does not include Hamilton County General Sessions Court Case Numbers 1879451 or 1879452, which allege that Mr. McPherson committed aggravated assault against the two law enforcement officers who initially attempted to detain him. Nevertheless, based on USSG § 5G1.3, Mr. McPherson maintains that concurrent sentencing for all his relevant conduct is appropriate.

15

Respectfully submitted,
SPENCER McPHERSON
By counsel:

/s/ Martin W. Lester
Martin W. Lester, Esq.
TBN 31603
LESTER LAW
P.O. Box 968
Hixson, TN  37343
(423) 402-0608
martin@lesterlaw.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of November, 2025, a true and correct copy of the foregoing Defendant's Sentencing Memorandum and Motion for Downward Variance was served via CM/ECF and/or e-mail on Kevin Brown, Assistant United States Attorney for the Eastern District of Tennessee.

/s/ Martin W. Lester

16